A. J. Gilbert v. Commissioner. Etta L. Gilbert v. Commissioner.
Gilbert v. Commissioner
Docket Nos. 14977, 14978.
United States Tax Court
1952 Tax Ct. Memo LEXIS 228; 11 T.C.M. (CCH) 457; T.C.M. (RIA) 52135; May 12, 1952
*228 A. John Pfeiffer, C.P.A., for the petitioners. Ralph V. Bradbury, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in income and victory taxes for the year 1943 in the amount of $3,839.83 against petitioner A. J. Gilbert and $719.11 against petitioner Etta L. Gilbert; he also determined deficiencies in income tax against these petitioners for the year 1944 in the respective amounts of $1,393.80 and $488.02. The deficiencies are based upon a number of adjustments, some of which are not now in dispute. The petitioners are husband and wife, residing in Columbia, South Carolina. They filed their returns for the years in controversy with the collector of internal revenue for the district of South Carolina. The parties have filed a stipulation of facts and have entered into certain oral stipulations during the course of the trial. The facts thus stipulated are hereby found and incorporated herein by reference. 1. During the years 1934-1943, inclusive, A. J. Gilbert was employed by B. S. McDade who operated a sole proprietorship known as Richland Oil Company. A. J. Gilbert was general manager *229 of Richland Oil Company and was in charge of its filling stations; he was to receive one-half of the profits of the business. The Richland Oil Company was not registered as a partnership and no partnership returns were filed for any of the years 1934-1944, inclusive. In 1938 A.J. and Etta L. Gilbert jointly purchased three lots and a dwelling in Charlotte, North Carolina, at a total cost of $4,100. Shortly thereafter, a filling station was constructed on this property, the cost of which was paid by Richland Oil Company and recorded on its books as an asset of its business. Certain other improvements such as pumps and neon signs were also placed on the property at the expense of Richland Oil Company and recorded on its books as an asset of its business. The understanding of the Gilberts and McDade that the filling station and accompanying improvements belonged to McDade is reflected in the practice whereby McDade claimed depreciation on his returns for the years 1938-1942 with respect to the filling station and improvements whereas no such depreciation was claimed by the Gilberts for those years. In 1943 McDade and A. J. Gilbert terminated their business relationship in unpleasant *230 circumstances, and McDade deducted the depreciated book value of the Charlotte filling station and improvements as an abandonment loss. After the split between McDade and A. J. Gilbert, the Gilberts in 1943 sold the Charlotte property (consisting of the three lots, the house, and the filling station and improvements placed upon the property) for an aggregate sales price of $16,300. In determining the deficiencies for 1943 the Commissioner refused to include in the cost basis of the property thus sold any amount for the cost of the filling station and related improvements. Moreover, he treated the filling station and improvements as having been acquired by the Gilberts only upon abandonment by McDade, and therefore treated that portion of the capital gain allocable to the filling station and improvements as short-term capital gain, taxable in full. The remaining capital gain, taxable in full. The remaining capital gain was treated as long-term capital gain, only one-half of which was included in income. No error has been assigned as to the allocations, but petitioners challenge the Commissioner's use of a zero basis for the filling station and improvements, as well as his related *231 action in treating the latter as acquired only upon surrender to them by McDade. Petitioners argue that the arrangement between A. J. Gilbert and McDade over the years was a partnership, that A. J. Gilbert contributed his share of the cost of the filling station and improvements, and that he had an interest in them all along. The evidence in this respect is vague, and in part contradictory. Nevertheless, we are satisfied and find as a fact that there was no partnership, that McDade paid for the filling station and improvements, and that petitioner acquired them without cost in 1943 when McDade abandoned them. In the circumstances, the Commissioner's action in this respect must be sustained. In connection with the Charlotte filling station, the Commissioner made a further adjustment affecting tax liability of both petitioners for 1943, by denying depreciation deductions on account of the filling station, treating it as having a zero basis in the hands of petitioners. Our conclusion above as to the gain on sale of the property requires that we approve the Commissioner's action in relation to the depreciation issue. Not having paid anything for the filling station, petitioners are *232 not entitled to depreciation with respect thereto. 2. A. J. Gilbert owed land in fee simple in Columbia, South Carolina, on which the so-called Taylor Street, 2304 Main Street, and West Columbia filling stations were constructed. The land was purchased in the name of A. J. Gilbert with funds furnished by the Richland Oil Company, which, however, were charged to A. J. Gilbert's drawing account. But the expenses incurred in constructing the filling stations and improvements were, as in the case of the Charlotte filling station, paid by the Richland Oil Company and recorded on its books as an asset of its business. McDade had claimed depreciation on these filling stations and improvements each year from the date of acquisition until the year when they were no longer under his control. He claimed abandonment losses for the depreciated book value of the buildings and improvements in the taxable year 1944. A. J. Gilbert claimed no depreciation on either the buildings or improvements during any of the years 1938-1943, inclusive, nor did he have them recorded on his books and records until 1944. The filling station and improvements at the Taylor Street, 2304 Main Street, and West Columbia *233 sites were acquired by A. J. Gilbert without cost, when they were abandoned to him by McDade. In determining the deficiency against A. J. Gilbert for the year 1944, the Commissioner disallowed depreciated deductions in the aggregate amount of $935 with respect to these three filling stations. Since we have found that A. J. Gilbert acquired the filling stations without cost, we approve the Commissioner's determination in this respect. 3. During the period 1934 to 1943, A. J. Gilbert reported substantial amounts as "salaries" earned, and the amounts so reported were deducted as "salary expense" by B. S. McDade. In 1942 A. J. Gilbert reported earnings in the amount of $17,391.46 as having been received from B. S. McDade, his "employer". In answer to questions on his 1942 and 1943 Federal income tax returns he indicated that he was a salaried employee. On his 1943 return, A. J. Gilbert did not report any salary from B. S. McDade or the Richland Oil Company, but attached a statement to his return which reads as follows: "Richland Oil Co. claims they paid certain funds for my account and charged same to me, but up to the time this return is being filed have been unable to secure *234 sufficient information from them to ascertain what they have paid for my account that would make me liable for Income Tax Purposes. Mr. C. M. Young, with the Columbia Audit and Record Service, which firm is filing my return for me has tried several times to secure this information from them but has also been unable to do so. This is the reason for my filing a Tenative return. The $180.00 in above schedule is the only funds I have received and if and when I am able to ascertain that they have paid out funds for me and charged same to my account, which would make me liable for taxes, I will immediately file an amended [amended] return." A. J. Gilbert made no efforts to ascertain his withdrawals from the Richland Oil Company nor the charges which were made against his drawing account for money expended for his benefit other than as set forth in the above statement. In determining the deficiency against A. J. Gilbert for 1943, the Commissioner added $11,878.17 to petitioner's income as salary received from B. S. McDade on behalf of Richland Oil Company. The total debits to A. J. Gilbert's drawing account on the general ledger of the Richland Oil Company for 1943 totaled $16,417.03, *235 of which $8,568.77 represented items in cash paid out on A. J. Gilbert's behalf, such as payments of A. J. Gilbert's personal taxes, utility bills, etc. The balance is made up of journal entries on the last day of the year, of which no details appear in the ledger. After examining all the evidence, we are satisfied and find as a fact that the correct amount to be added to petitioner A. J. Gilbert's income as salary for 1943 is $8,568.77. 4. Revisions in several depreciation deductions account for further adjustments made by the Commissioner in A. J. Gilbert's tax liability. (a) The Commissioner allowed depreciation at the rate of three per cent, rather than four per cent as claimed by petitioner, with respect to the so-called Rosewood Drive house. No evidence was introduced on this matter, and since the burden rests upon petitioner, the Commissiiner's action in this regard must be approved. (b) A. J. Gilbert purchased a corner lot with a brick building thereon located at 1827-31 Main Street, Columbia, South Carolina, for $27,000 in 1944. This building is at the present time over fifty years old and fronts on Main Street approximately fifty-two feet and on Richland Street approximately *236 ninety feet, with the lot being approximately fifty-two by one hundred and thirty-eight feet. The building consisted of a ground and second floor when purchased. Thereafter, A. J. Gilbert constructed a basement. At the present time, there are a radio store and furniture store located on the ground floor, housekeeping rooms on the second floor, and in the basement there is a bar and drink stand, as well as a warehouse for furniture. The property is now in such state of disrepair as to require extensive improvements within the next few years. The property was purchased as an investment during a period when there was considerable expansion in the neighborhood. This property is located in the heart of the business district in an area of active expansion and development and the land is of great value. In determining the deficiency against A. J. Gilbert for 1944, the Commissioner computed depreciation upon the 1827-31 Main Street property by allocating one-half of the purchase price ($13,500) to the land, and by allowing depreciation with respect to the remaining $13,500 allocated to the building. Petitioner argues that only $5,000 should be allocated to the land and $22,000 to the *237 building. We have examined the record carefully and are satisfied and find as a fact that the cost of the building, subject to depreciation, was $13,500, as determined by the Commissioner. 5. In determining the deficiency against A. J. Gilbert for 1944, the Commissioner revised petitioner's income upwards by $2,042.35 by reason of alleged understatement of sales at the West Columbia filling station. The reason for the Commissioner's action was that the percentage of cost of goods sold to sales reported at the West Columbia station was substantially higher than like percentages at two other filling stations owned by petitioner. Accordingly, by applying a formula based upon the average of the other two stations the Commissioner increased petitioner's income at the West Columbia station by $2,042.35. However, petitioner testified that the West Columbia station made sales at wholesale with a smaller margin of profit. We accept that testimony as truthful, and are satisfied that there is no basis for increasing petitioner's income from the West Columbia station, as was done by respondent. In this respect, respondent's determination is disapproved. 6. The determinations of deficiency *238 against Etta L. Gilbert were based in part upon downward revisions of several depreciation deductions. Apart from the depreciation on the Charlotte property, which has already been covered, and apart from depreciation on property at 1914 Main Street, Columbia, South Carolina, which will be considered below, petitioner offered no evidence as to the basis, age and character of the remaining properties (Colonial Drive and Rock Hill properties). Accordingly, the Commissioner's determination in relation to the latter must be approved. On July 8, 1944, Etta L. Gilbert purchased a parcel of property at 1914 Main Street, Columbia, South Carolina, consisting of land and a building for a total consideration of $15,000. In determining the deficiency against her for 1944, the Commissioner, in computing depreciation on the building, allocated $7,500 of the cost to land and the remaining $7,500 to the building. The petitioner for review filed with this Court claimed that $10,000 should be allocated to the building; and, on brief, it is now asserted in her behalf that $11,500 of the total cost should be allocated to the building. The lot involved is in the middle of the 1900 block of Main Street, *239 fronting thirty feet thereon. In the spring of 1944, a Mr. L. R. Scoggins acquired a vacant lot with a fifty-seven foot frontage contiguous to the 1914 Main Street property for $8,625. The Scoggins lot was deeper than that purchased by Etta L. Gilbert. Taking all the evidence into account, we are satisfied that of the $15,000 paid by petitioner, $6,000 was paid for the land and $9,000 for the building, and we so find as a fact. Depreciation on the building should be computed on the basis of $9,000 cost. 7. The deductibility of certain local county and municipal taxes paid by A. J. Gilbert in 1944 is in dispute. (a) Property located at 2000 Assembly Street, Columbia, South Carolina, was purchased and paid for by petitioner A. J. Gilbert prior to 1944. For personal reasons, title was taken in the name of his daughter, Almeta G. McDade. Subsequently, on September 9, 1944, Almeta conveyed the property to A. J. Gilbert, and Federal stamps aggregating $8.25 were affixed to the deed. Almeta lived at 2000 Assembly Street and paid no rent for the period when the property stood in her name. She received no income therefrom and paid no taxes, insurance, or interest with respect to the property. *240 On December 28, 1944, A. J. Gilbert paid $143.07 representing county and municipal taxes on this property. We are satisfied that A. J. Gilbert owned the property during the period in question, notwithstanding that it was in his daughter's name for a portion of the time, and accordingly we hold that the taxes he thus paid with respect to his property are deductible. (b) Property located at Gervais and Pulaski Streets, Columbia, South Carolina, was purchased by A. J. Gilbert, with his own funds, but, for personal reasons, title was taken in the names of Bettie May Brand and Leslie P. Brand, his daughter and son-in-law. The Brands conveyed the property to A. J. Gilbert by deed dated September 20, 1944, to which were affixed Federal stamps in the amount of $8.25. The property consisted of a lot on which were located four rented houses. The Brands received no income from the property, and paid no taxes, insurance or interest with respect to the property. On December 28, 1944, A. J. Gilbert paid $84.14 county and municipal taxes on this property. The property was his and the taxes thus paid by him are deductible. (c) The Commissioner disallowed $504.10 representing county and municipal *241 taxes paid by A. J. Gilbert on the property located at 1827-31 Main Street$ Columbia, South Carolina. He had purchased the property on March 21, 1944, and as part of the purchase agreement the county and municipal taxes were prorated between vendor and vendee to the date of sale. In South Carolina, property taxes are assessed effective January 1 and are payable on or after October 15 and are delinquent after December 31. The $504.10 was assessed against Exchange Investment Company, the vendor, and paid by A. J. Gilbert on December 28, 1944. The tax liability involved had attached before A. J. Gilbert purchased the property. The issue has been before the courts in a variety of situations, and it is well established that payment of real estate taxes by a vendee which had already attached to the property prior to purchase constitutes a capital item and is part of the cost of the property; such payment is not deductible by the vendee. Decisions will be entered under Rule 50.